IN THE UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF TENNESSEE

DIVISION

**FILED**

OCT 0 6 2021  DB

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN.

ABIGAIL PATRICIA WEST,

      Plaintiff,

)
)
)
)
)
)
)
)
)
)
)

NO. 03-21 0771

CIVIL RIGHTS COMPLAINT

42 USC SECTION 1983: FIRST,

FOURTH, & FOURTEENTH

AMENDMENTS

SYLVIA VANDERBILT, ALEXANDRIA HICKSON,

VALISA HOLLAND, DEBORAH DIAZ, KIMBERLY

WHITE, DOUGLAS SYKES, DAVID BARRAS, RYAN

SHERRY, MICHAEL HODGES, AMBER DILLEHAY,

TENNESSEE DEPARTMENT OF CHILDREN'S

SERVICES, METRO NASHVILLE POLICE

DEPARTMENT, VANDERBILT UNIVERSITY

MEDICAL CENTER, AVERHEALTH.

      Defendants.

**COMPLAINT FOR CIVIL RIGHT VIOLATIONS**

Plaintiff Abigail West brings this action pursuant to 42 USC section 1983, seeking relief
against defendants as remedy for various actions surrounding the unlawful removal of her infant
daughter into states custody by those acting under color of law, on 10/6/2020. West's First,

Fourth, and Fourteenth amendment rights were violated many times in what appears to be a targeted attack on the plaintiff's family by those who are charged to protect families.

## PRELIMINARY STATEMENT

1.     This lawsuit arises from an metropolitan child welfare conglomerate that perpetuates a widespread indifference toward the suffering of parents and children caught in its web. The question of protected liberty interests in terms of parenting has been clarified and revisited numerous times, and still on October 6, 2020, a healthy four-week-old breastfeeding infant was aggressively and unlawfully seized from the arms of her loving mother while state officials ignored the rights of the mother and the child. The callous indifference from nearly every state actor involved in this cause of action is enough to shock the conscience of any reasonable person who hears the story. This is proved by the 200,000 people who spent the time to view the recording of this action, that was posted on Facebook last October. An emergency removal into states custody causes trauma for any child who suffers this fate, even the youngest ones, and the state has an obligation to all of is citizens to use this action as a last resort. In this case it seems that an aggressive removal in the middle of the night surrounded by police was the goal of the state actors who initiated this action of an unreasonable warrant-less seizure. These state actors ignored policy, both state and federal guidelines, and the facts of the case, in order to remove a child into states custody, at any cost. The dependency case against plaintiff West was non-suited after 9 months of torture to the family, making it evident that the state never had cause for this action. Not only does the family deserve compensation for their losses, it is imperative that both punitive and injunctive relief be utilized in this action to deter the state from using its power to intimidate and disrupt families without good cause.

## Jury Demand

2.     This is an action for injunctive relief and damages pursuant to 42 U.S.C. Section 1983 for violations of Plaintiffs federally protected constitutional rights. Plaintiff alleges that all of the Defendants acted under color of state law and violated Plaintiff's rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States.

## Jurisdiction

2

3. This Court has jurisdiction over Plaintiff's federal claim under 28 U.S.C. §§ 1331 and 1343.

4. Venue in the United States District Court for the Middle District of Tennessee is proper pursuant to 28 U.S.C. § 1391.

## Parties

5. Plaintiff Abigail Patricia West is an individual who resides at 940 Colfax Dr. Nashville, TN 37214.

6. Defendant Sylvia Vanderbilt is an individual who resides in Nashville. At the time of the action she was employed by the State of Tennessee, Department of Children's Services, as a DCS caseworker 4, in a supervisory role as a Child Protective Services Investigator, in Nashville Tennessee, Davidson County. She acted in concert with other defendants in the deliberate violations of plaintiff's rights while representing her office and authority as a government agent. She acted on her own and on the direction of her employer and in concert with other defendants and under color of law. She is being sued in her individual capacity.

7. Defendant Alexandria Hickson an individual who resides in Nashville, TN. At the time of the action she was an employed by The State of Tennessee, Department of Children's Services, as a Child Protective Services Investigator, in Nashville Tennessee, Davidson County, under the direct supervision of defendant Vanderbilt. Her actions directly violated the plaintiff's rights. At all times mentioned herein, she acted both on her own and at the direction of her employer and in concert with other defendants, under color of law. She is being sued in her individual capacity.

8. Defendant Valisa Holland is an individual who resides in Nashville, TN. At the time of the action she was employed by The State of Tennessee, Department of Children's Services as a DCS caseworker 3, specifically in a supervisory role in the foster care department. Her actions directly violated the plaintiff's rights, while representing her office and authority as a state agent. At all times relevant hereto she acted both on her own and on the direction of her

employer, in concert with the other defendants, under color of law. She is being sued in her individual capacity.

9.      Defendant Deborah Diaz is an individual who resides in Nashville, TN. At the time of the action she was employed by the State of Tennessee, Department of Children's Services, as a DCS caseworker 4, in a supervisory role as a team lead in the foster care department, in Nashville Tennessee, Davidson County. She acted in concert with other defendants in the violations of plaintiff's rights, while representing her office and authority as a government agent. She acted on her own and on the direction of her employer and in concert with other defendants, under color of law. She is being sued in her individual capacity.

10.     Defendant Kimberly White is an individual who resides in Nashville, TN. At the time of the action she was an employed by The State of Tennessee, Department of Children's Services, as a DCS caseworker 3, in Nashville Tennessee, Davidson County. Her actions directly violated the plaintiff's rights. At all times mentioned herein, she acted both on her own and at the direction of her employer and in concert with other defendants, under color of law.

11.     Defendant Douglas Sykes is an individual residing in Nashville, TN. At the time of the action he was employed by Metro Nashville Police Department, in Nashville Tennessee. His actions directly violated the plaintiff's rights. At all times mentioned herein, he acted both on his own and at the direction of Metro Nashville Police Department and in concert with other defendants, under color of law. He is being sued in his individual capacity.

12.     Defendant David Barras is an individual residing in Nashville, TN. At the time of the action he was employed by Metro Nashville Police Department, in Nashville Tennessee. His actions directly violated the plaintiff's rights. At all times mentioned herein, he acted both on his own and at the direction of Metro Nashville Police Department and in concert with other defendants, under color of law. He is being sued in his individual capacity.

13.     Defendant Ryan Sherry is an individual residing in Nashville, TN.  At the time of the action he was employed by Metro Nashville Police Department, in Nashville Tennessee. His actions directly violated the Plaintiffs rights. At all times mentioned herein, he acted both on his

4

own and at the direction of Metro Nashville Police Department and in concert with other defendants, under color of law. He is being sued in his individual capacity.

14.      Defendant Michael Hodges is an individual residing in Nashville, TN. At the time of the action he was employed by Metro Nashville Police Department, in Nashville Tennessee. His actions directly violated the Plaintiffs rights. At all times mentioned herein, he acted both on his own and at the direction of Metro Nashville Police Department and in concert with other defendants and under color of law. He is being sued in his personal capacity.

15.      Defendant Dillehay, LCSW, is an individual who resides in Nashville, TN.  At the time of the action she was employed by Vanderbilt University Medical Hospital as a medical social worker. Her actions directly violated the plaintiff's rights. At all times mentioned herein, she acted on both her own and under the direction of her employer and in concert with other defendants, under color of law. She is being sued in her individual capacity.

16.      Defendant Tennessee Department of Children's Services (referred to in all subsequent paragraphs as TN DCS) is a municipality located at 200 2nd Ave N. Nashville TN, 37243.  Actions or inactions of TN DCS have violated the plaintiff's rights, while representing their office and authority as a state agency. Defendant TN DCS is being sued in its individual capacity and official capacity.

17.      Defendant Metro Nashville Police Department (referred to in subsequent paragraphs as MNPD) is a municipality located at 600 Murfreesboro Pike, Nashville TN, 37210. Actions or inactions of the MNPD have violated the plaintiffs. Rights. Defendant MNPD is being sued it its individual capacity and official capacity.

18.      Defendant Vanderbilt University Medical Center (will be referred to as VUMC in subsequent paragraphs) is an entity located at 1211 Medical Center Dr. Nashville TN, 37232, a private service provider of TN DCS with shared liability and contractual ties to defendant TN DCS and other state agencies, under the authority and laws of the state of Tennessee. Actions or inactions of defendant VUMC have violated the plaintiffs rights, while representing the authority of the state of Tennessee. Defendant VUMC is being sued in its individual capacity.

19.     Defendant Davidson County is a local public entity under the laws of the state of Tennessee.

20.     Defendant Averhealth is an entity located at 404 James Robertson Pkwy. Nashville TN, 37219, a private service provider of TN DCS with shared liability and contractual ties to TN DCS and other state agencies, under the authority and laws of the State of Tennessee. Actions or inactions of Averhealth have violated the Plaintiffs rights, while representing the authority of the State of Tennessee. Averhealth is being sued in its individual capacity.

## STATEMENT OF FACTS

21.     In 2020, plaintiff West gave birth to her fourth child, at Vanderbilt University Medical Center (VUMC), in Nashville TN. (Minor child will be referred to from now as L.L.) West, delivered this child without an epidural or any other medical interventions. West declined all pain medication after birth except ibuprofen.

22.     L.L. was born at approximately 41 weeks gestation, the infant weighed 8 pounds and 8 ounces, extremely healthy, with very high APGAR scores. The infant nursed right after delivery for 45 mins. She did not need any interventions from medical staff and remained with mother for the entire hospital stay.

23. L.L.'s biological father, Lucas Lassiter, was with West at the hospital, to welcome his first daughter to the world.

24.     West was unable to sign intake papers or consent to treat due to not having a chance to read the documents while in active labor or while being examined after delivery.

25.     West's mother, Dr. Ann Charvat, hastily signed the documents with her name. West was being examined. This signature is not legally binding. West is competent and no power of attorney or other authorization for Charvat to sign for West has existed in the 17 years since West became a legal adult.

26.     West informed Moneique Neloms, her nurse and an employee of defendant VUMC, of this mix up and told staff she was happy to read the paperwork and consult with her attorney about signing, but that at the current time she could not consent to any treatment without

6

discussing that with L.L.s pediatrician. This is a reasonable request considering both the NICU team and the nursery team had said that L.L was very healthy. In, fact, the lactation department was delighted with how well L.L was nursing.

27.     An unknown employee instead sent West's waste product, her umbilical cord tissue, to the lab to be sent to ARUP Labs in Utah for a qualitative drug detection panel. Medical records report that this test was ordered by Dr. Jon Eric Betts, L.L.'s pediatrician, before he had arrived at the hospital, which is impossible. Betts denies ordering any tests at any time, although his name seems to have been fraudulently used twice in order to run tests that were not medically necessary.

28.     It is unknown if the hospital ran a test on the blood found inside the umbilical cord. This test is quantitative unlike the cord tissue test. No mention of this is in the medical records. This test would have been accurate, unlike the cord tissue test.

29.     A referral was put into the hospital social work department.

30.     Betts arrived at the hospital. L.L. was examined and found to be healthy enough for discharge. Betts discussed the parent's privacy concerns with them. West and Lassiter informed Betts that they would follow his recommendations, but West was not comfortable with signing an electronic consent to treatment that they were not given the option to read or discuss with counsel. West and Lassiter informed Betts of their involvement with separate family court litigation that had been pending for several years.

31.     West also informed Betts of her use of legal CBD products derived of hemp, federally legal under The Farm Bill. Betts was not concerned and left to begin the discharge process for mother and infant.

32.     Several other medical professionals assessed mother and baby before they were discharged including several nurses, a midwife, and a Lactation specialist. No one raised any health concerns for mother or baby. Baby was eating and urinating well.

33.     Defendant Dillehay, visited Wests room around lunchtime on 9/9/2020. West's mother, Charvat, joined shortly after defendant Dillehay, and serves as a credible witness for this visit.

34.     Defendant Dillehay wanted to discuss West's substance use history. This history is in Wests medical records, along with her other 3 healthy labors and deliveries, complete

history of pre-natal care for all 4 pregnancies, and well woman care for 20 years prior. West had been a patient of defendant VUMC since she was a very small child.

35.     West was open and honest about her history, informed defendant Dillehay that she had been sober for 7 years prior to the ending of her marriage, and when the custody battle began she had gone back to 12 step meetings and therapy and had been sober for approximately 17 months at the time, but she did use non-psychoactive CBD products for insomnia and for general wellness. Store bought CBD contains a low level of legally allowed THC, causing the presence of THC in drug screening tools, which would need to be sent for lab confirmation in order to measure the quantitative amount of THC. West told defendant Dillehay that she had discussed this with L.L.s pediatrician and he had no concerns for L.L.

36.     West explained about her contested divorce and custody proceedings and that she was unable to sign a document that she had not read or discussed with her attorney of record, John Schwalb. West also explained that Lassiter was also represented by an attorney of record and also fighting a legal battle. Both parents requested the ability to discuss any legal matters with their attorneys before making any decisions.

37.     Defendant Dillehay became noticeably agitated. West picked up her phone and this caused defendant Dillehay to become more agitated and eventually leave the room in anger while West called out to her not to leave. Charvat witnessed.

38.     Medical record shows that defendant Dillehay was not truthful in her report of this visit. She left out her angry response to West's attempt to invoking her right to read things before she signs them.

39.     West and L.L. were discharged.

40.     On 9/11/2020, defendant Vanderbilt and her new hire Latereka Ealy, arrived to the home of L.L., West, and Lassiter, 940 Colfax Dr. West opened the door and agreed to an interview, but explained that due to the Covid-19 Pandemic, she could not safely allow them to enter the home of L.L., who was a mere days old with no natural immunity to fight off disease.

41.     Defendant Vanderbilt told West that the cord tissue had tested positive for "meth". West expressed confusion and denied any use of street meth for the prior 17 months. Defendant Vanderbilt requested Wests signature on HIPPA releases and a drug screen. Again, West said that due to the pending litigation for her divorce and custody battle (filed sept 2018 and settled May 2021) and her being represented by an attorney, she would have to talk to him

and get back to defendant Vanderbilt. Defendant Vanderbilt agreed and requested to see L.L. West agreed to show her the baby through the glass door to maintain safety standards for preventing Covid-19. Defendant Vanderbilt told West that CPSI Teena Jones would take over the investigation after today, and she shared Jones' contact info with West.

42.     West and Lassiter took L.L to be checked by Betts, at his Old Harding Pediatric Association office in Bellevue 3 times in the first month of L.L.'s life. Betts reported that she was very healthy and developmentally normal.

43.     West requested her medical records from defendant VUMC, the cord tissue results were confusing by the presence of methamphetamine and amphetamine in the sample. She read the interpretive information on the ARUP website, explaining that this was a qualitative screen and that several OTC medicines can trigger presence of a metabolite and this test can not tell the difference. Also listed on the website is that this test is not an indicator of infant outcomes.

44.     Around September 20th, defendant Dillehay assisted by defendant VUMC, used Dr. Betts credentials to have another test run on West's waste product, without consent from West or instruction from Betts, weeks after West had been discharged from the hospital. Defendant Dillehay then sent Wests medical records to defendant Vanderbilt, again with no consent or exigent circumstances.

45.     West attempted to contact Jones several times over the next few weeks. Jones reached out to West on 10/2/2020, West allowed Jones in her home. West explained what she had learned about the umbilical cord tissue drug screen and Jones administered a urine screen. Again, West explained that she was using legal CBD products which contain low levels of completely legal THC. Jones read the screening results and said they were negative for all substances. Jones chatted with West, referring to herself as a "baby snatcher" and laughing. Jones then explaining that the case would be closed, as she did not see any safety risks.

46.     Court Liaison Aren Ragsdale, from the south-central district of TN DCS emailed Vanderbilt between 10/2/2020 and 10/5/2020. The content of this communication is unknown due to several discovery requests being denied during the 9 months West waited for the adjudication trial for the Dependency and Neglect petition filed by defendants Vanderbilt and TN DCS, to be heard. (voluntarily non-suited on 7/1/2021)

47. On 10/5/2020 around 10 in the morning West received a phone call from defendant Vanderbilt. Defendant Vanderbilt asked if West had a case in Hickman county. West explained that she did not but that L.L.s father had an appeal from juvenile court to circuit court that was scheduled for the upcoming Thursday, 10/8/2020.Defendant Vanderbilt informed West that Jones was out sick and that defendant TN DCS needed to do another urine screen and home visit for reasons related to Lassiter's appeal in Hickman county.

48. On 10/5/2020 around 11am defendant Hickson arrived at family home at 940 Colfax Drive in Nashville. Charvat was present as witness and caring mother and grandmother. West told defendant Hickson that she did not want any more people in the home due to the Covid-19 pandemic, so West said she would take the tests in a discreet area of the yard. West again shared that she used legal CBD containing a low level of legal THC.

49. Defendant Hickson is trained and certified to administer drug screens outside of a lab. On 10/5/2020 she administered two different drug screens to West, a mouth swab and a urine screen. The results for the mouth swab have never been shared with West.

50. The urine screen was brand named Ucup and was a 10 panal screen. Defendant Hickson read the results of this screen as "positive" for THC, based on a faint line versus a dark one. The instructions on the package of the test say that two lines is a negative, even if one of the lines is faint. The sample should have been sealed and sent off for laboratory confirmation. Then the results would have been scientifically sound, admissible in court, and an accurate reading of the presence or absence of drug metabolites in the sample. This step was skipped by defendant Hickson, and this fabricated evidence was reported in the dependency petition against West.

51. This issue was reported to defendant TN DCS, who did not respond and continued prosecution of West.

52. Shortly after defendant Hickson left the home, West received a call from defendant Vanderbilt, asking West if she had an immediate safety placement. West replied that she had "100 safety placements, but why do I need one?" This response agitated defendant Vanderbilt who then said, "never mind, the removal order has been signed" and then hung up the phone on West. Charvat was present as witness.

53. West and Charvat both called defendant Vanderbilt several times over the next day with no response. West voluntarily submitted to and paid for a private hair follicle test on the

advice of LCSW Tony Owens who she had been working with for Drug and Alcohol counseling as part of her divorce proceedings.

54. Lassiter arrived back in Nashville after being away for work in Lynchberg, TN. West and L.L. had gone to stay with Charvat, rather than staying alone at the family home.

55. On 10/6/2020 defendant Vanderbilt came to the family home at 940 Colfax Drive with a representative of defendant MNPD. On the request of defendant MNPD, Lassiter facetimed West and West showed the healthy baby to the officer. Defendant Vanderbilt and the officer left.

56. Shortly after this, John Schwalb, attorney for mother received word from defendant TN DCS that a removal order for L.L. had been signed. Defendant TN DCS had also reported L.L. as a missing person to defendant MNPD, and threatened an amber alert if West did not allow defendant TN DCS to remove L.L. Arrangements were made for West to meet defendant TN DCS at a neutral location, a Wendy's located at 741 Thompson Ln. in Nashville.

57. Charvat, West, and L.L. met up with Lassiter at the agreed upon location at approximately 8pm. Shortly after defendants MNPD dispatched defendant Sherry to 741 Thompson Lane.

58. Upon his arrival at 9:11pm, defendant Sherry, in uniform, purposely blocked in the vehicles of Charvat and Lassiter, clearly expressing that West and her family were not allowed to leave. When questioned about why he was there, he again mis-informed West that there was judicial approval to remove L.L. into states custody and he was assisting defendant TN DCS. There was no judicial authority for this action.

59. At 10:46 defendant Sykes arrived in uniform at 741 Thompson Lane, parking his marked police vehicle behind the plaintiff's family's cars, further detaining them.

60. MNPD shift change happened at 11:20 and defendants Hodges and Barras arrived and again blocked West's family's vehicles from being physically able to pull out of the parking spots, it was clear that West could not leave, and was detained for another 30 mins before defendant White arrived to seize L.L.

61. Lassiter's attorney for his appeal in Hickman county, Connie Reguli, arrived at the Wendy's around 11:30 and began to livestream on Facebook live. The recording is about 45 minutes long and shows the duration of the detainment and seizure of L.L.

62.     Very close to midnight on 10/6/2020, defendant White arrived to take custody of L.L. She hand delivered the order in a sealed envelope.

63.     Defendant White had a toddler car seat not designed to safely transport a 4-week-old infant, defendant White declined offers to take the mothers car seat and continued to struggle for around 15 minutes just to buckle L.L. in the seat. Defendant MNPD did nothing to help or stop this illegal and dangerous transport of such a young baby.

64.     The envelope from defendant White contained a "non-exigent" order for removal signed by Magistrate O'Neil of the Davidson County Juvenile Court. Even the attorneys for West and Lassiter were not familiar with such an order, except to remark that clearly there was no exigency.

65.     Defendant TN DCS Administrative Policies and Procedures: 14.12, explains a non-exigent removal order. This order is a non-emergency legal proceeding in whichdefendant TN DCS petitions to remove a child/youth from the home but does not ask for the child/youth to be removed immediately. This policy explains that the procedure for this type of removal begins with a Child and Family Team Meeting (CFTM) to decide appropriate placements for the child, followed by a 72-hour hearing. Policy details the difference between exigent circumstances and non-exigent circumstances. West was not afforded this process, as DCS failed to follow their own policy.

66.     West's preliminary hearing in this matter was on 10/8/2020. Before the hearing defendant TN DCS offered to place L.L. with Charvat if West agreed to waive her right to a preliminary hearing. After the traumatic events a few evenings prior, West agreed under duress. Schwalb assured her that the trial on the dependency hearing was required to be scheduled in 30 days and by then the hair follicle test results taken on 10/5/2020 would be returned.

67.     On 10/9/2020 L.L. was taken to BrighterDay Pediatric practice for an EPSNDT appointment without informing the mother or getting her consent. West still has not been permitted to see the records from that visit, but L.L. had a bloody band aid on her leg and defendants Holland and TN DCS refused to tell West or her mother, Charvat, what caused the injury to L.L. Defendant Holland and her inferior caseworker Rebecca Murphy took L.L. to the doctor and then to Charvat, who was L.L.'s placement for a 90-day Trial Home Visit. Defendant Holland told Charvat that L.L. was withdrawing off of meth, that L.L, had stopped breathing the previous night, and they would soon be preforming a hair follicle drug test on the baby. West has

never been able to verify this information with a medial professional. L.L. was never suspected to have any Neonatal Abstinence by any medical professionals when she was born at VUMC.

68.     On 10/12/2020 defendant TN DCS held a "pre-custodial CFTM", 6 days after the immediate removal of L.L. from her mother, in the middle of the night, surrounded by officers of the MNPD who were using a level of force only allowed in exigent circumstances.

69.     Defendants Holland and TN DCS refused to let West decide the best nutrition for L.L. West was threatened with being charged with child abuse if she nursed L.L. Specifically West was threatened with a count of child abuse for each time she nursed L.L, if West were to violate that rule placed on her by defendant TN DCS. West complied and exclusively pumped until defendant Diaz went against the wishes of the legal team and allowed West to nurse her baby. West was barred from nursing L.L. for approximately one month.

70.     Defendant Diaz, told West and Lassiter, that when the results of West's hair follicle test came in, if they were negative, then defendant TN DCS would return L.L. to the care, custody, and control of West. West has this phone call recorded.

71.     On 10/14/2020 the results of the hair follicle test returned negative for all 10 substances the panel tested for. This test goes back at least 90 days, has a lab confirmation, and can differentiate between OTC metabolites of methamphetamine and street meth, unlike the umbilical cord tissue test.

72.     On 10/21/2020 defendant Holland and Rebecca Murphy came to the placement location, where West was caring for L.L. and Charvat was supervising. Defendant Holland asked West for an observed urine screen. West complied but disagreed with the results the "positive" for THC that Holland read. West did not sign paperwork because of objections with results. Defendant Holland left sample with West. Defendant Holland claimed the results were positive because of a "faint line" even though the package of the test cup clearly explained that a faint line meant the sample was negative for the substance.

73.     After Defendant Holland and Murphy left, West received the results of a independent urine screen she had taken the previous Monday, the results of that test were negative.   Months later it was discovered that on that same date after she left Defendant Holland had sent a sample to LabCorp for confirmatory testing, this sample had West's name on it. However, the lab had refused to test the sample, because it was not properly sealed, the bottle

was "slick", and it did not have a valid state id number with it. Clearly, this was an attempt by defendants Holland and TN DCS to falsify evidence.

74. This was reported to defendant TN DCS, they did not respond and continued to prosecute West.

75. West was ordered to take random drug tests at a private testing company, defendant Averhealth. West took many drug tests during the pendency of this case. Every test was negative for all drugs on the panel, but twice, once in November 2020 and once in December of 2020, the overall results read "positive". The details of these results showed that there was no presence of any drug metabolites in West's urine. The "positive" was due to abnormal creatinine levels in Ms. West's urine, which can sometimes be a sign of a patient attempting to dilute their urine to hide the presence of drug metabolites in their urine. Abnormal creatinine is also very common in breastfeeding mother's urine and the urine of someone who drinks a lot of water, both things are true of West. Also, calling a test with abnormal creatinine "positive' is fraudulent on the part of defendant Averhealth and even plainly states their policy when handling a possibly dilute sample-to test the patient again and record this test as "dilute negative" West informed several parties-defendant Averhealth's corporate and local offices, the drug testing certifying board, and defendant TN DCS.

76. Still, on 2/4/2020, during an exit hearing, defendant TN DCS's attorneys submitted these two tests as their only evidence, leaving out all exculpatory evidence. Custody was exited to Charvat, mother's visitation would remain supervised and West's motion for overnight visitation would be heard in 6 weeks.

77. At that subsequent hearing West was granted overnight visitation only after drug testing expert, Dr. Melissa Mohler testified to the limitations of the umbilical cord tissue test and the falsified dilute results from defendant Averhealth. Even after an expert made it clear that L.L. was not drug exposed, they still did not dismiss the petition against West.

78. In June of 2021, Lassiter moved for Magistrate Carlton Lewis to recuse himself from the case, based on clear bias. Magistrate Lewis granted the motion and eventually the case was assigned to the Davidson County Juvenile Court Judge Shelia Calloway.

79. The Dependency and Neglect petition was scheduled for March 2021, then rescheduled for September2021, and again until December2021/January2022. West completed the Family Permanency Plan(FPP) in December of 2020. During the months of January 2021 and

June 2021, West was told numerous times from many different employees of defendant TN DCS, including many attorneys that there was no way of bringing L.L. home to her family home and her parents until the case had been adjudicated, despite West's completion of the family permanency plan and zero probable cause of dependency.

80.     West requested her lawyer withdraw and that was approved by Judge Shelia Calloway on approximately 6/30/2020.

81.     On 7/1/2021 defendant TN DCS filed a motion for voluntary non-suit and custody of L.L. was immediately returned to West, with no further explanation.

## Claim 1.

## 42 USC section 1983 claim against Defendants Dillehay, Vanderbilt, Metro Nashville Police Department, and Vanderbilt University Medical Center for unreasonable search and violations of right to privacy.

82.     Plaintiff West incorporates the preceding paragraphs by reference as if fully rewritten herein.

83.     As stated above, defendant Dillehay violated West's Fourth Amendment right to be safe from unreasonable searches and her right to privacy.  This was a deliberate violation by defendant Dillehay in an effort to sway to the investigation being done by defendants TN DCS and Vanderbilt. Her obligation to report suspected child abuse, does not give her freedom to violate clearly established rights of her clients or act in an investigative role.

84.     Defendant VUMC has a contractual relationship with Defendant TN DCS so defendant Dillehay's use of hospital equipment to impersonate a physician, her delivery of West's medical records directly to defendant Vanderbilt is evidence that when defendant Dillehay deliberately and maliciously violated Wests rights, she was doing so with the authority of a state agent, under color of law.

85.     As stated above, defendant Sylvia Vanderbilt received the stolen records from defendant Dillehay and entered them in to the record of her employer, defendant TN DCS with

full knowledge that West had not given consent to this action. No exigency existed to allow for this deliberate action by defendant Vanderbilt that deprived West of her fourth amendment right to privacy that was committed under color of law.

86.     Defendant TN DCS has a contractual obligation with defendant VUMC. Employees from both agencies caused deprivation of West's rights which suggests a pattern of behavior widely accepted as custom for both entities. When West discovered this breach, she informed all defendants named in this part and many members of the legal department for defendant TN DCS. West also informed representatives employed by defendant VUMC. No one from either entity responded to her notification of deprivation of rights by their staff. Nor did any employee from either entity make any attempts to remedy said deprivation of rights. Clearly it is the practice, policy, or custom of both of these defendants to violate their patients right to privacy, while representing the authority of the state and acting under color of law. Both entities are liable for damages for the action or inaction that has created this pattern.

## Claim 2–

## 42 USC section 1983 claim against Defendants Vanderbilt, Sykes, Barras, Sherry, Hodges, White, MNPD, and TN DCS for violations of procedural due process rights, the right to be free from unreasonable seizures, and the rights of family association.

87.     Plaintiff West incorporates the preceding paragraphs by reference as if fully rewritten herein.

88.     As stated above, On 10/6/2020, defendants Vanderbilt and MNPD mis-led Attorney Schwalb, who at the time was representing West in a divorce, that a court order for immediate removal of L.L. into states custody had been signed by Magistrate O'Neill. When the order approved by Magistrate O'Neil was a non-exigent order and did not allow for this action. The non-exigent order only compelled West to enter into a non-exigent case with defendant TN DCS. This misinformation on the part of defendant Vanderbilt was a deliberate action designed to deprive West from her Fourteenth amendment procedural due process

16

rights since clearly no exigent circumstances existed. This action was done under color of law.

89.     Defendant MNPD violated West's due process rights perhaps due to a pattern and custom of negligence, which would nonetheless make them liable in a 42 USC section 1983 claim. However it is possible that this violation is part of a ill-intended intentional practice of rights violations caused by defendant MNPD not verifying the existence of outside state agencies claim of the existence of warrants, before detaining a person. This action of misleading West's attorney was either a deliberate deprivation of West's right to procedural due process or it was the result of a custom of indifference to violation of rights of the clients of defendant TN DCS, due to a widespread general distrust of anyone who is a client of defendant TN DCS, by those employed by defendant MNPD. Regardless defendant TN DCS is liable for violating Wests rights as is described in detail above, and this action was done under color of law.

90.     As stated above, defendants Sykes, Sherry, Barras, and Hodges detained West without prior judicial approval, exigent circumstances, or any probable cause that West had committed any crimes. Defendants detained West at 741 Thompson Lane for hours without cause, thus violating West's clearly established right to be free from unreasonable seizures, this was done by uniformed officers clearly acting under color of law.

91.     As stated above, Defendant White seized L.L., from 741 Thompson Lane, where West was being unlawfully detained by other Defendants in this part. Defendant White arrived, announcing her employment with Defendant TNDC. She delivered a copy of the non-exigent removal order signed by Magistrate Lewis, establishing that she was aware that her actions of seizing L.L. were not approved by a judge and was therefore unlawful and in direct violation of West's First amendment rights to family association and Fourteenth amendment procedural due process protections. This action was done while White was actively working as a caseworker 4 for defendant TN DCS, establishing that her actions were performed under color of law.

92.     Defendant MNPD dispatched officers and authorized their detainment of West without verifying prior judicial authority or exigent circumstances required to do this, depriving West of her fourth amendment rights to be free from unreasonable seizures.

17

Clearly this defendant is bound by state laws and carries the authority of the state, making these violations under color of law.

93. Defendant TN DCS was notified of its employees deliberate action to deprive West of her rights through misleading the plaintiff's attorney about the nature of the order signed by Magistrate O'Neill. No one from this entity responded. It is clear that the custom of defendant TN DCS is to deliberately mislead their clients in order to remove children without getting prior judicial approval, deliberately and knowingly depriving both parents and children of their protected liberty interests. This action deprived West of her First and Fourteenth amendment rights to family association free of government interference without proper procedural due process standards. Clearly this defendant is bound by state laws and carries the authority of the state, making these violations under color of law.

## Claim 3--

## 42 USC section 1983 claim against Defendants Hickson, Holland, Averhealth, Dillehay, VUMC and TN DCS for violations of substantive due process.

94. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

95. As stated above there were many attempts by those acting under color of law to fabricate evidence against West.

96. As stated above, defendant Dillehay, reported the results of a drug screen performed by ARUP labs on a sample of Wests umbilical cord tissue, to defendant TN DCS. She later printed these same records and hand delivered them to defendant TN DCS. Defendant Dillehay did not explain the limitations of the test, that the presence of methamphetamine metabolites could have been linked to several OTC medicines, and that neither mom nor baby exhibited any signs of dependency on any drugs, specifically the fact that the baby did not have any symptoms of Neonatal Abstinence Syndrome and was discharged home to mom. She falsely represented the capabilities of the cord tissue test to make it appear that West's infant daughter, L.L. tested positive for street crystal meth. Based

on defendant Dillehays behavior when speaking to West in the hospital, and after West was discharged, it is obvious that this misrepresentation of these results was deliberate and done in an effort to deprive West of her Fourteenth amendment substantive due process rights.

97.     Defendant Hickson is trained and carries a certification to be able to administer drug screens outside of a lab. As described above, defendant Hickson's indifference to collecting sound evidence and sharing all exculpatory evidence with the courts is a deliberate action designed to deprive West of her substantive due process rights under the Fourteenth amendment. Defendants employment and announcement that she was taking these actions as part of her job make it clear that this action of deprivation of West's rights was under color of law. It is reasonable that the training that the defendant has had should make her aware that falsifying evidence and withholding evidence is a violation of federally protected civil rights to substantive due process.

98.     As stated above, on 10/21/2020 defendant Holland administered a Ucup drug screen to West and misread the results and did not seal the sample and send off for laboratory confirmation. Defendant Holland was training Rebecca Murphy who was also present for this screen. Murphy told West and Charvat that she had been trained by defendant TN DCS to read a faint line as a positive result and not to worry about lab confirmation.

99.     As stated above defendant Holland then sent a fraudulent sample to the lab that did not belong to West, attempting to pass it off as a sample collected from West.

100.    This is action of falsifying evidence is an obvious, deliberate, and likely malicious act by defendant Holland to deprive West of her Fourteenth amendment rights to substantive due process, while acting under color of law.

101.    As shown above, defendant TN DCS has a custom of training employees to falsify drug screen results and not send the samples for confirmation. This is a malicious practice perpetuated by defendant TN DCS in an effort to initiate and delay cases. Defendant TN DCS is bound by state law to protect the Fourteenth amendment rights of its clients, and this action of falsifying evidence was done under color of state law and in violation of West's Fourteenth amendment rights.

102.    As stated above defendant Averhealth, fraudulently reported West's drug test results as positive on 2 occasions violating West's Fourteenth amendment rights. Defendant Averhealth did nothing to remedy the issue in spite of being informed by West and Lassiter.

103.    Defendant Averhealth is a private entity under contract as a provider with defendant TN DCS and other public agencies. West was ordered to use this facility for random drug tests and the results were shared with defendant TN DCS. This contractual relationship, policy of reporting to defendant TN DCS, and the legal ramifications of this action of falsifying drug tests make it clear that defendant Averhealth was acting under color of law when taking these actions that deprived West of her rights. Therefore, defendant Averhealth is liable under a 42 USC section 1983 claim.

### Claim 4.

### 42 USC section 1983 claim against Defendants Holland, Diaz, Nichols, and TN DCS for violating Plaintiff West's right to make important medical decisions for her daughter, L.L. and her right to due process standards before government intervention.

104.    Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

105.    As stated above, defendants Holland, and TN DCS did not inform or get consent from West to have L.L. examined or treated by BrighterDay Pediatric medical office.

106.    This action violated clearly established law on the subject going back more than 30 years by not following the due process standards required of child welfare organizations who believe a child in states custody should have medical attention, as described in detail above, in violation of Wests rights. Defendant Holland physically took L.L. to the doctor without following due process standards and then participated in withholding this information and the record from West, violating her First and Fourteenth amendment rights to family association and substantive due process rights, under color of law.

107.    As stated above, Defendants Diaz, Holland, and TNDCS barred West from making important medical decisions regarding nutrition decisions for L.L.. This action was reported to all defendants named in this part, and many members of the legal department of TN DCS. No action was taken.

108.    As stated above, West was never given the record from this visit at BrighterDay and defendants Holland, Diaz, and TN DCS actively withheld this information from West. As did many of the attorneys employed by defendant TN DCS, who aren't names in this suit due to their absolute immunity in 42 USC section 1983 claims. This action directly violated Wests rights to make choices in the best interest of her daughter, thereby violating her First and Fourteenth Amendment rights to family association and substantive due process, under color of law.

109.    Defendant DCS's clear indifference to the parent's right to be informed of medical examinations, for investigative or other purposes is in clear violation of established law and of Wests First and Fourteenth amendment rights, of family association and substantive due process, under color of law. The pattern of ignoring when caseworkers are depriving someone of protected rights makes defendant TN DCS liable under 42 USC Section 1983 for damages for deprivation of Wests rights under color of law.

**Wherefore, West requests that this court grants her the following relief:**

A. Compensatory relief against all defendants jointly and severally, in an amount to be determined at trial.

B. Punitive Damages against defendants Dillehay, Vanderbilt, and Holland as their actions are obviously malicious in nature and motivated by evil intent. Punitive damages against VUMC and Averhealth for callous and dangerous indifference. Plaintiff West expressly does not seek punitive damages against Defendants MNPD and TN DCS. West requests the courts discretion when awarding punitive damages for remaining defendants.

C. Injunctive relief against defendants MNPD and TN DCS that is to be determined at trial and is designed to deter future customs and patterns that contribute to the deprivation of federally protected civil rights for those they are tasked to serve.

D. Injunctive relief against defendant TN DCS in the form of a restraining order barring future harassment of West and her family.

E. Considering that this is a pro se complaint, plaintiff West seeks compensation for any time she has spent preparing this complaint or any time she will spend litigating this very important matter, amount to be determined at trial, including filing fees and

expenses. West also seeks relief for fees for expert witnesses to prepare and testify in this matter, amount to be decided at trial.

F. Such other relief as the court seems just and proper.

Respectfully Submitted,

Abigail Patricia West
940 Colfax Drive
Nashville, TN 37214

State of Tennessee
County of Davidson
On this 6th day of October, 2021, before me personally appeared Abigail Patricie West, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that such person executed the same. Witness my hand, at office, this 6th day of October, 2021,

Lydia A Hubbell
Lydia A. Hubbell
my commission expires May 2, 2022



# UNITED STATES DISTRICT COURT

for the

District of

Division

|  |  |
|---|---|
| Abigail Patricia West | Case No. _____ |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Sylvia Vanderbilt, Alexandria Hickson, Deborah Diaz, Valisa Holland, Douglas Sykes, David Barras, Ryan Sherry, Michael Hodges, Kimberly White, Amber Dillehay, Tennessee Department of Childrens Services, Metro Nashville Police Department, Vanderbilt University Medical Center, City of Nashville, County of Davidson

*Defendant(s)*

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

Jury Trial: *(check one)*  ☒ Yes  ☐ No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non–Prisoner Complaint)

## NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I.  The Parties to This Complaint

### A.  The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | | | |
|---|---|---|---|
| Name | Abigail Patricia West | | |
| Address | 940 Cofax Drive | | |
| | Nashville | TN | 37214 |
| | *City* | *State* | *Zip Code* |
| County | Davidson | | |
| Telephone Number | 615-693-6755 | | |
| E-Mail Address | abigailpatricia777@gmail.com | | |

### B.  The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | | | |
|---|---|---|---|
| Name | Sylvia Vanderbilt | | |
| Job or Title *(if known)* | DCS CASEWORKER 4 | | |
| Address | 200 2ND AVE N | | |
| | NASHVILLE | TN | 37219 |
| | *City* | *State* | *Zip Code* |
| County | DAVIDSON | | |

| | | |
|---|---|---|
| Telephone Number | 615-939-1233 | |
| E-Mail Address *(if known)* | | |

☒ Individual capacity    ☐ Official capacity

**Defendant No. 2**

| | | | |
|---|---|---|---|
| Name | KIMBERLY WHITE | | |
| Job or Title *(if known)* | DCS CASEWORKER 4 | | |
| Address | 200 2ND AVE N | | |
| | NASHVILLE | TN | 37219 |
| | *City* | *State* | *Zip Code* |
| County | DAVIDSON | | |
| Telephone Number | | | |
| E-Mail Address *(if known)* | | | |

☒ Individual capacity    ☐ Official capacity

**Defendant No. 3**

| | | | |
|---|---|---|---|
| Name | ALexandria Hickson | | |
| Job or Title *(if known)* | DCS CASEWORKER | | |
| Address | 200 2ND AVE N | | |
| | NASHVILLE | TN | 37219 |
| | *City* | *State* | *Zip Code* |
| County | | | |
| Telephone Number | | | |
| E-Mail Address *(if known)* | | | |

☒ Individual capacity    ☐ Official capacity

**Defendant No. 4**

| | | | |
|---|---|---|---|
| Name | Deborah Diaz | | |
| Job or Title *(if known)* | DCS CASEWORKER 4 | | |
| Address | 200 2ND AVE N | | |
| | NASHVILLE | TN | 37219 |
| | *City* | *State* | *Zip Code* |
| County | DAVIDSON | | |
| Telephone Number | 6153061522 | | |
| E-Mail Address *(if known)* | | | |

☒ Individual capacity    ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

> This is an action for money damages pursuant to 42 U.S.C. Section 1983 for violations of the Plaintiffs rights under the First, Fourth, and Fourteenth Amendments of The Constitution of The United States. PLEASE SEE ATTATCHMENT

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

> 

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

> PLEASE SEE ATTATCHED LIST OF DEFENDANTS, STATEMENT OF FACT, AND STATEMENT OF CLAIMS

## III.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?

Nashville, Tennessee

B.  What date and approximate time did the events giving rise to your claim(s) occur?

CAUSE OF ACTION WAS ON 10/6/2020

C.  What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*

PLEASE SEE ATTATCHED STATEMENT OF FACTS

## IV.  Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

No bodily injury

## V. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

> SEE ATTATCHED SPECIFIC RELIEF

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10-6-2021

Signature of Plaintiff

Printed Name of Plaintiff    Abigail Patricia West

### B. For Attorneys

Date of signing:

| | | | |
|---|---|---|---|
| Signature of Attorney | | | |
| Printed Name of Attorney | | | |
| Bar Number | | | |
| Name of Law Firm | | | |
| Address | | | |
| | *City* | *State* | *Zip Code* |
| Telephone Number | | | |
| E-mail Address | | | |