**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ABIGAIL PATRICIA WEST,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:21-cv-00771** |
| | ) | |
| **SYLVIA COOKS et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Pending before the Court in this *pro se* civil rights action are several dispositive motions: 1) second motion to dismiss of Defendants Tennessee Department of Children's Services and Deborah Diaz (Doc. No. 50); 2) motion to dismiss of Defendant Avertest (Doc. No. 52); 3) motion to dismiss of Defendant Metro Nashville Police Department (Doc. No. 54); 4) motion for judgment on the pleadings by Defendant Vanderbilt University Medical Center (Doc. No. 61); 5) motion for judgment on the pleadings of Defendant Amber Dillehay (Doc. No. 63); and, 6) motion of Plaintiff for summary judgment (Doc. No. 104). For the reasons that follow, the motions filed by the Defendants will be granted and the motion filed by Plaintiff will be denied.

## I. BACKGROUND

Abigail Patricia West filed this case under 42 U.S.C. § 1983, alleging wrongful removal of her infant daughter ("L.L.") from her custody by the Tennessee Department of Children's Services ("DCS"). The removal lasted for several months until DCS proceedings were terminated and LL was returned to West. (Doc. No. 1 at 15). Her Amended Complaint explains that she is:

> seeking relief against defendants as remedy for various actions surrounding the unlawful removal of her infant daughter into states custody by those acting under color of law. The infant was removed in an improper and highly questionable way on 10/6/2020. Violation of West's rights also include the malicious actions of

> tampering with evidence, withholding exculpatory evidence, and general dishonesty both before and after the [infant's] removal on 10/6/2020, when West began to be aware of her civil rights being violated by individuals, courts, and private businesses all carrying the authority of the state of Tennessee. West's First, Fourth, and Fourteenth [A]mendment rights were violated many times in what appears to be a targeted attack on the plaintiff's family by those who are charged to protect families.

Amended Complaint (Doc. No. 47 at ¶ 1). West names as defendants:

(1) DCS and five individual caseworkers – Sylvia Cooks (Vanderbilt),[1] Alexandria Hickson, Valisa Holland, Deborah Diaz, and Kimberly White;

(2) the Metro Nashville Police Department ("MNPD") and four individual police officers – Douglas Sykes, David Varras, Ryna Sherry, and Michael Hedges;

(3) Vanderbilt University Medical Center ("VUMC") and one individual social worker at VUMC – Amber Dillehay; and,

(4) Avertest, LLC d/b/a Averhealth ("Avertest"), a private business that provides laboratory drug testing. ( Id. at ¶¶ 12-25). Holland and Dillehay are sued in their individual and official capacities, Cooks (Vanderbilt) is sued in her individual capacity, and Hickson, Diaz, White, and the four MNPD officers are sued in their official capacities. (Id. at ¶¶ 12-21). Plaintiff seeks compensatory damages, punitive damages and prospective injunctive relief. (Id. at 29-30).

She sets out four causes of action:

1. Violation of the Fourth Amendment by Dillehay, Cooks (Vanderbilt), DCS, and VUMC for unreasonable searches and violations of Plaintiff's right to privacy, (id. at ¶¶ 96-100);

2. Violations of the First, Fourth, and Fourteenth Amendments against Cooks

[1] In her original complaint, Plaintiff identified Sylvia Vanderbilt as the name of this Defendant, but she subsequently identified her as Sylvia Cooks in the amended complaint. Nonetheless, because Plaintiff continues to refer to this Defendant as Sylvia Vanderbilt or "Vanderbilt" in the body of her amended complaint, the Court will refer to this Defendant as Sylvia Cooks (Vanderbilt).

(Vanderbilt), Sykes, White, DCS, the MNPD and the four MNPD officers for violations of her right to procedural due process, her right to be free from unreasonable seizures, and her right of family association, based upon events occurring on October 6, 2020, when L.L. was taken into DCS custody, (id. at ¶¶ 100-107);

3. Violation of the Fourteenth Amendment by Hickson, Holland, Dillehay, VUMC, DCS, and Avertest for lack of substantive due process because these Defendants falsified evidence against her regarding her alleged drug usage, (id. at ¶¶ 108-118); and,

4. Violations of the First and Fourteenth Amendments by Holland, Diaz and DCS "for violating Plaintiff West's right to make important medical decisions for her daughter, L.L., and her right to due process standards before government intervention," based upon events occurring on October 9, 2020, when L.L. was taken by Holland to a pediatric clinic for a medical visit without Plaintiff's prior consent or participation and without subsequently providing Plaintiff with medical records from the visit. (Id. at ¶¶ 119-125).

DCS, Diaz, Avertest, MNPD, VUMC, and Dillehay have responded to the pending motions. The remaining eight Defendants have not been served with process. (Doc. Nos. 23, 26-28, 30-31, 33, and 35).

## II. PLAINTIFF'S ALLEGATIONS

In September 2020, West gave birth to her fourth child, L.L., at VUMC. (Doc. No. 47 at ¶ 26). She was unable to sign intake and consent to treat paperwork because she was in labor, so her mother, Ann Charvot, signed the papers. (Id. at ¶¶ 29-30). Although she and the baby were healthy and the baby was nursing well, West believes a VUMC employee sent a sample of "the gel-like tissue that surrounds the blood vessels that connect the mother and baby" to an offsite lab for a

qualitative drug screen. (Id. at ¶ 32). The physician who was treating West, Dr. Betts, told West that he had not ordered the test. (Id. at ¶ 33). On September 9, 2020, Dillehay visited West in her hospital room, and questioned her about her substance abuse history, her pending divorce and custody proceedings, and then asked her to sign some type of document. At some point Dillehay became agitated during the visit and left the room angry after West refused to sign the document without talking to her attorney. (Id. at ¶¶ 37-40). West and L.L. were discharged from VUMC that day. (Id. at ¶ 42).

West alleges that Dillehay falsified Dr. Betts's signature in order to have the tests performed on the umbilical cord without West's consent. West believes Dillehay printed the test results and provided them to DCS, and lied in official reports. (Id. at ¶¶ 47 and 97). On September 11, 2020, Cooks (Vanderbilt) came to West's house, told her that her umbilical cord had tested positive for methamphetamine, and requested that West sign HIPAA releases and a drug screen. (Id. at ¶¶ 43-44). West asserts that she has been "sober" since 2019 and that she again did not want to sign any forms until speaking with her attorney. (Id. at ¶ 44).

Over the following weeks, West was tested for drugs by employees of VUMC and DCS. (Id. at ¶¶ 47, 49, and 52-55). One of these tests occurred on October 5, 2020, when Hickson administered a mouth swab and urine screen to West. (Id. at ¶¶ 53-55). Although Hickson read the urine screen as positive due to the presence of THC, West disputes that the test was performed and read correctly and states that she reported this issue to DCS. (Id. at ¶¶ 55-56). Cooks (Vanderbilt) called West shortly after Hickson left and asked if West had an "immediate safety placement," then told West that "the removal order has been signed." (Id. at ¶ 58).

On October 6, 2020, Cooks (Vanderbilt) came back to West's home and saw L.L. through a

video screen. (Id. at ¶ 62). After Cooks (Vanderbilt) left, West's attorney "received word" that a removal order for L.L. had been signed and that DCS would file an Amber Alert if West did not surrender L.L. to DCS custody. (Id. at ¶ 63). West agreed to meet DCS at a parking lot in Nashville later that day. (Id. at ¶¶ 63-64). MNPD officers arrived and told West that DCS had judicial approval to take custody of L.L. (Id. at ¶¶ 65-67). Kimberly White of DCS later arrived to take custody of L.L. and produced a non-exigent order for L.L.'s removal that was signed by a Davidson County Juvenile Court magistrate judge. (Id. at ¶¶ 69, 71).

A state court proceeding occurred on October 8, 2020, regarding the removal of L.L. West contends that the documents and necessary forms provided to her about the removal were incorrectly filled out and she did not support the removal. (Id. at ¶¶ 72-75). She further contends that she was coerced into waiving her right to "due process" so that L.L. could be placed in the custody of her mother. (Id. at ¶ 76). On October 12, 2020, DCS held a pre-custodial child and family team meeting, during which West was directed to stop breastfeeding L.L. for a month. (Id.at ¶¶ 79-80).

West was tested for drugs several times over the following months, including random tests by Avertest. She asserts the drug tests came back as negative. (Id. at ¶¶ 82-88). However, West alleges that one of the urine tests administered by Holland on October 21, 2020, was read by Holland as positive for the presence of THC. Also two of the random tests performed by Avertest were labeled positive on November 20, 2020, and January 1, 2021. (Id. at ¶¶ 83 and 86). West disputes the accuracy of these positive test results, alleging that (1) Holland read the test incorrectly and also improperly sent in a sample for verification, which the drug testing company refused to test because it was not properly sealed and identified, and (2) Avertest falsified the two test results as positive because of alleged abnormal creatinine levels, which may indicate diluted urine or health problems.

(Id. at ¶¶ 83-84 and 86). West further contends that she had numerous independent drug tests performed and a complete physical, the results of which were all negative for the presence of drugs. And they showed no evidence of any possible substances that would create a false-positive. (Id. at ¶¶ 60, 82, and 86-88).

On February 4, 2021, during a court hearing West contends that the DCS attorney relied upon the two positive tests by Avertest and excluded any exculpatory evidence. (Id. at ¶ 89). She contends that the custody of L.L. remained with her mother and that she was granted overnight visitation after she had an expert testify about the limitations of the umbilical cord tissue tests. Specifically, the expert explained the inaccuracy of the two test results from Avertest. However, the petition filed against her was not dismissed despite the testimony of her expert. (Id. at ¶¶ 89-90). West alleges that the removal of L.L. remained ongoing even though West completed a Family Permanency Plan in December 2020. (Id. at ¶ 93). Finally, on July 1, 2021, DCS filed a motion to non-suit the petition and L.L. was returned to West without explanation. (Id. at ¶ 95).[2]

## III. STANDARDS OF REVIEW

DCS and Diaz assert a sovereign immunity defense. A defense based upon sovereign immunity is appropriately raised under Federal Rule of Civil Procedure 12(b)(1) as a threshold jurisdictional defense. Geomatrix, LLC v. NSF Int'l, 82 F.4th 466, 478 (6th Cir. 2023); Does v. Whitmer, 69 F.4th 300, 305 (6th Cir. 2023). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." Cartwright v. Garner, 751 F.3d 752, 759 (6th Cir.

[2] Although filings in this case indicate that the issue of the custody of her children has been a part of her ongoing divorce proceedings, (Doc. No. 93), it does not appear that there are any current removal proceedings initiated by DCS related to L.L. or any of her other children.

2014) (citing United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994)). In considering a facial attack, the Court must take all the allegations in the complaint as true and determine "whether the plaintiff has alleged a basis for subject matter jurisdiction." Id. But when the defendant makes a factual attack, the Court may consider and weigh evidence, including evidence outside of the pleadings, to determine whether the plaintiff has "carrie[d] the burden of establishing subject matter jurisdiction by a preponderance of the evidence." Ready for the World Inc. v. Riley, 2019 WL 4261137, at *2 (E.D. Mich. Sept. 9, 2019) (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)). Given that resolution of the sovereign immunity defense raised by Defendants DCS and Diaz and does not involve or require resolution of factual matters, the Court views the defense as a facial attack.

The standard of review for motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) and motions for judgment on the pleadings brought under Federal Rule of Civil Procedure 12(c) is essentially the same. Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). Such motions test the sufficiency of the pleading to determine whether it states a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. A legal conclusion, including one couched as a factual allegation, need not be accepted as true nor are mere recitations of the elements of a cause of action sufficient. *Id.*; Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010). Moreover, factual allegations that are merely consistent with a defendant's liability do not satisfy the Plaintiff's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. Iqbal, 556 U.S. at 678. When determining whether the complaint

meets this standard, the Court must accept the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018).

Because West is a *pro se* litigant, the Court is required to give her Amended Complaint a liberal construction. Haines v. Kerner, 404 U.S. 519, 520 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991). *Pro se* litigants, however, are not exempt from the pleading requirements of the Federal Rules of Civil Procedure, Wells v. Brown, 891 F.2d 591, 593 (6th Cir. 1989), and the Court cannot supply or assume facts that are not pled or create claims that are not actually raised. Id. Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (internal quotation marks and citation omitted).

## IV. ANALYSIS

The Court begins its analysis by recognizing that parents have a fundamental and protected constitutional right in their family integrity, including the right to the care, custody and control of their children. Kottmyer v. Maas, 436 F.3d 684, 689-90 (6th Cir. 2006); Troxel v. Granville, 530 U.S. 57, 65-66 (2000). This right is "neither absolute nor unqualified" and it is "limited by an equal[ly] compelling governmental interest in the protection of children." Kottmyer, 436 F.3d at 690.

### A. Section 1983

Section 1983 provides a federal cause of action to vindicate alleged violations of federal rights by state actors. To plausibly state a claim under Section 1983, a plaintiff must set forth facts showing: 1) that the plaintiff was denied a right, privilege, or immunity secured by the Constitution

or laws of the United States, and 2) that the deprivation was caused by a person acting under color of state law. Flagg Bros. v. Brooks, 436 U.S. 149, 155 (1978); Phillips v. Tangilag, 14 F.4th 524, 532 (6th Cir. 2021). If either element is not satisfied, dismissal of the Sectio 1983 claim is proper. BPNC, Inc. v. Taft, 147 F. App'x 525, 529 (6th Cir. 2005).

B. Tennessee Health Care Liability Act

The motions of VUMC, Dillehay, and Avertest seek a dismissal because West's claims raise state law issues concerning medical malpractice that implicate the Tennessee Health Care Liability Act ("THCLA"). They argue dismissal is required because West failed to comply with the Act's pre-suit notice and certificate of good faith requirements. The Court finds no merit in this argument.

West clearly asserts only civil rights claims under Section 1983. Although her factual allegations do involve events that occurred while she was receiving medical treatment or medical testing from medical care providers, she has not brought claims under state law for medical malpractice, for health care violations, for negligence, or for violations of any state law. Furthermore, courts have found that Section 1983 claims are not subject to the procedural requirements of the THCLA. Hudson v. CoreCivic, Inc., No. 3:21-CV-00319, 2024 WL 1121129, at *4 (M.D. Tenn. Mar. 14, 2024) (Trauger, J.) ("The THCLA does not apply to [the plaintiff's] Section 1983 claims."); Bivens v. Centurion, 2021 WL 1668041, at *4 (E.D. Tenn. Apr. 28, 2021) (same).

C. Motion to Dismiss of MNPD

MNPD argues that it must be dismissed because it is not a legal entity that is capable of being sued under Section 1983. (Doc. No. 55 at 1). West does not oppose this motion, and she requests that MNPD be removed as a defendant. (Doc. No. 93 at 7). Accordingly, this motion will be granted

and MNPD will be dismissed.

D. Second Motion to Dismiss of DCS and Diaz

DCS is named in each of West's causes of action, seeks dismissal under Rules 12(b)(1) and 12(b)(5). DCS argues (1) as a state agency, it is entitled to sovereign immunity and (2) it has not been properly served with process. Plaintiff opposes these dismissal arguments. (Doc. Nos. 81 and 82).[3] The Court will dismiss DCS based on sovereign immunity.

Principles of sovereign immunity protect a State from being sued in federal court by one of its own citizens. Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54 (1996); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984); Hans v. Louisiana, 134 U.S. 1, 15 (1890).[4] State agencies are entitled to assert sovereign immunity in the same manner as the State. Mikel v. Quin, 58 F.4th 252, 256 (6th Cir. 2023) (finding that claims against DCS brought by a citizen of Tennessee were barred by sovereign immunity); Hoffman v. Tennessee Dep't of Child. Servs., No. 3:20-CV-00900, 2020 WL 6946606, at *2 (M.D. Tenn. Nov. 24, 2020) ("DCS is entitled to the benefit of the State of Tennessee's sovereign immunity."). "This immunity is far reaching. It bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div., 987 F.2d 376, 381 (6th Cir. 1993) (citing to Pennhurst State Sch. & Hosp., 465 U.S. at 100-01).

---

[3] West attaches to her response an affidavit and related documents from Dr. Melissa Moler, who states that West's drug test results were incorrect, inaccurate, and false. (Doc. No. 82-1). However, the Court has not considered this affidavit or any other evidentiary materials in deciding any of Defendants' pending motions because the motions are confined to the pleadings.

[4] Although DCS and Diaz refer to immunity under the Eleventh Amendment in arguing that they are entitled to sovereign immunity, Eleventh Amendment immunity and sovereign immunity are conceptually distinct. Nonetheless, the Sixth Circuit has noted that parties and courts often use the terms interchangeably, WCI, Inc. v. Ohio Dep't of Pub. Safety, 18 F.4th 509, 513 (6th Cir. 2021). Defendants' reference to the Eleventh Amendment is not significant in this case given the clear applicability of sovereign immunity. Id.

The claims against Defendant DCS may proceed only if there is a showing that (1) Congress has properly abrogated the state's immunity or (2) the state has explicitly waived its immunity and consented to being sued in federal court on the claims. Pennhurst State Sch. & Hosp., 465 U.S. at 99; Latham v. Office of Att'y Gen. of Ohio, 395 F.3d 261, 270 (6th Cir. 2005). Neither exception applies here. It is well established that Congress has not overridden a state's immunity with respect to civil rights claims brought under Section 1983. Quern v. Jordan, 440 U.S. 332, 341 (1979); Boler v. Earley, 865 F.3d 391, 410 (6th Cir. 2017); Harrison v. Michigan, 722 F.3d 768, 771 (6th Cir. 2013). It is further well established that the State of Tennessee has generally not consented to waive its immunity. Berndt v. State, 796 F.2d 879, 881 (6th Cir. 1986). Nor has West pointed to any conduct in the litigation of this case that amounts to consent by DCS to waive its sovereign immunity.

West's arguments against the application of sovereign immunity lack merit. Although she contends that DCS is a municipality to which sovereign immunity does not apply, DCS is a state agency that is entitled to assert the defense of sovereign immunity. Gean v. Hattaway, 330 F.3d 758, 766 (6th Cir. 2003) (finding that "the Tennessee Department of Children's Services" is "the State" for purposes of the sovereign immunity analysis); Kolstedt v. Tennessee Dep't of Children's Servs., No. 2:25-CV-00033, 2025 WL 1643599, at *3 (M.D. Tenn. June 9, 2025) ("It is well established that DCS, as an agency of the State of Tennessee, enjoys the State's sovereign immunity from suit in federal court"). The Court understands West believes the concept of sovereign immunity is not fair, because it allows DCS to shield itself from liability. (Doc. No. 82 at 3-6). However, sovereign immunity as a defense is so well established that it cannot reasonably be questioned as a valid legal defense. Furthermore, because it is an immunity from being sued and not just from liability,

sovereign immunity does not hinge upon the merits of a plaintiff's underlying claims. Geo Grp., Inc. v. Menocal, 607 U.S. 438, 445 (2026) (sovereign immunity "shields the Government from suit (absent a waiver) regardless whether the Government violated the law."). Thus, West's arguments in her response about the merits of her claims do not present a basis to reject the defense of sovereign immunity. Finally, the Court notes that state entities, such as DCS, are not "persons" who can be sued under Section 1983. Mikel, 58 F.4th at 256; Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989), which West has not addressed.

Accordingly, sovereign immunity prevents West from pursuing her claims against DCS. Heithcock v. Tennessee Dep't of Children's Servs., 2016 WL 11786416, at *2 (6th Cir. Oct. 4, 2016) ("the district court correctly dismissed on sovereign-immunity grounds [the plaintiff's] claims against the State, DCS, and the DCS employees in their official capacities."); Kolstedt, 2025 WL 1643599, at *4; Bradley v. Tennessee Dep't of Children's Servs., 2023 WL 12056689, at *1 (E.D. Tenn. May 9, 2023) (dismissing Section 1983 complaint against DCS on the basis of sovereign immunity); Hoffman, 2020 WL 6946606, at *2 (same).[5]

The motion to dismiss will also be granted as to Diaz, who raises the sovereign immunity defense in addition to a failure to state a claim under Rule 12(b)(6). Initially, the Court notes that West opposes only the dismissal of DCS and does not offer any arguments opposing the motion as it pertains to Diaz. (Doc. No. 82 at 1-8). Furthermore, dismissal of Diaz is warranted because she is sued in only her official capacity for monetary damages. As a state official sued in her official capacity, Diaz is not a "person" who can be sued for damages under Section 1983, Will, 491 U.S. at 71; Gean, 330 F.3d at 766, and she is likewise protected by the State's sovereign immunity. Sharma

[5] Because sovereign immunity is a complete defense to the lawsuit itself, it is unnecessary to address DCS's alternative argument that it has not been properly served with process.

v. Ohio State Univ., 25 F.App'x 243, 248 (6th Cir. 2001) ("State officials acting in their official capacities are immune from suit for damages."); Bellinger v. Schwendimann, No. 3:24-CV-01170, 2025 WL 3113167, at *2 (M.D. Tenn. Nov. 6, 2025) ("State officials sued in their official capacity enjoy sovereign immunity from suit."). Thus, the dismissal of Diaz is both unopposed and legally supported.

E. Motion for Judgment on the Pleadings of VUMC

VUMC is named in West's Fourth Amendment claim, and her Fourteenth Amendment substantive due process claim. Seeking judgement on the pleadings under Rule 12(c), VUMC argues: (1) it cannot be sued under 42 U.S.C. § 1983 because it is not a state actor; (2) the Amended Complaint fails to set out factual allegations showing the existence of a policy or custom of VUMC, which is necessary to support a constitutional claim under the Monell standard of liability; and, (3) West's Section 1983 claims against it are barred by the one-year statute of limitations. (Doc. No. 62 at 1-2).[6]

West opposes dismissal of VUMC. (Doc. No. 86). After asserting the "contractual relationship" between VUMC and DCS and other state agencies "muddy the waters," West argues that the actions of VUMC and its employees were done with "the authority of the state, making them state agents." Id. at 1. Further, she asserts that it is clear that VUMC and its employees "signed off on the continued investigatory actions even though [West] had been discharged and had not given any consent while [West] was a patient." Id. She also contends that the conduct of VUMC and its employees constituted a "gross violation" of her civil rights and that VUMC should be held

[6] In a footnote in its supporting memorandum, VUMC also raises qualified immunity and *Rooker-Feldman* abstention as alternative defenses to West's substantive due process claim. (See Doc. No. 62 at 9, n. 7). Because the Court finds that VUMC's three main arguments for dismissal have merit and because the alternative arguments are not fully briefed, the Court declines to address them.

responsible for its "propensity to target folks with the same diagnosis as myself, substance use disorder" and no allegations that West is a danger to her baby. Id. at 2. The legal principles that control West's claims against VCMU lead to the conclusion that West's allegations against VUMC fall short. West has not set forth sufficient factual allegations showing that VUMC acted under color of state law or that VUMC had a policy or custom that directly caused a constitutional violation to satisfy Section 1983. Even if West's factual allegations were sufficient to support her Section 1983 claims against VUMC, the events involving VUMC occurred more than one year prior to the filing of this lawsuit and are barred by the one-year statute of limitations.

"[As] a general rule, Section 1983 does not reach the conduct of private parties acting in their individual capacities." Weser v. Goodson, 965 F.3d 507, 516 (6th Cir. 2020); Lindsey v. Detroit Entm't, LLC, 484 F.3d 824, 827 (6th Cir. 2007). For this reason, private citizens and entities rarely fall within the purview of liability under Section 1983. Indeed, a private hospital and its employees are not typically deemed to be state actors for the purposes of Section 1983. Bryant-Bruce v. Vanderbilt Univ., Inc., 974 F. Supp. 1127, 1142 (M.D. Tenn. 1997); Maliani v. Vanderbilt Univ. Med. Ctr., No. 3:10-0235, 2010 WL 4054268, at *5 (M.D. Tenn. Oct. 15, 2010) (Haynes, J.) ("Private hospitals and their employees are not considered state actors under Section 1983."); see also Kottmyer, 436 F.3d at 688 (Section 1983 claims against hospital and hospital social worker for taking actions regarding newborn infant that led to investigation by state family services department was dismissed because of a lack of allegations showing that the hospital and social worker acted under color of state law).

In some limited situations a private party may be deemed to have acted in a manner that brings the party within the scope of Section 1983. These situations occur when: (1) the private party

engages in a traditional public function; (2) the private party is compelled to act by the State; (3) there is a symbiotic relationship or nexus between the private party and the State; or, (4) the private party has engaged in a conspiracy or concerted action with other state actors. Weser, 965 F.3d at 516. State action may also be found if the actions of the private party are "entwined with governmental policies" such that the private party is "overborne by the pervasive entwinement" of the state and state officials. Marie v. Am. Red Cross, 771 F.3d 344, 363 (6th Cir. 2014).

The Court finds that West's allegations fail to support any of these exceptions. Initially, she fails to set out the specific actions taken by VUMC that she contends occurred under color of state law. When medical services are provided by a private party to another private party, court's consistently conclude that is not a traditional public function. Tester v. Ballad Health, Inc., 2025 WL 2496270, at *3 (E.D. Tenn. Aug. 29, 2025) (collecting cases). West fails to otherwise allege that VUMC engaged in some type of traditional public function. With respect to the state compulsion test, it requires a showing that the State significantly encouraged or coerced the private actor, either overtly or covertly, to take a particular action so that the action of the private actor was actually that of the state. Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003); Wolosky v. Huhn, 960 F.2d 1331, 1333 (6th Cir. 1992). Again, West has not alleged facts of any specific action taken by VUMC or its employees that was compelled or coerced by the State to be deemed that of the State. Thomas v. Nationwide Children's Hosp., 882 F.3d 608, 612 (6th Cir. 2018) (private physicians were not coerced into acting and thus did not act under color of state law for purposes of parents' Fourth and Fourteenth Amendment claims when the physicians ordered medical tests of suspected abused children). Similarly, West does not point to any facts that reflect a close symbiotic relationship or nexus between VUMC and the State upon which the actions of

VUMC may be fairly attributed to the State. Chapman v. Higbee Co., 319 F.3d 825, 834 (6th Cir. 2003). Even if VUMC and its employees interacted with or cooperated with DCS, that does not evidence the type of conduct necessary to satisfy the nexus test. Thomas, 882 F.3d at 612 ("The frequent reality that the state regulates private entities or cooperates with them does not transform private behavior into state behavior."); Lansing v. City of Memphis, 202 F.3d 821, 831 (6th Cir. 2000) ("mere cooperation" between state officials and private individuals "does not rise to the level of merger required for a finding of state action").

Although West argues that "the actions of employees of VUMC were done with the authority of the state," she does not set out facts that actually support this assertion. The mere existence of a contractual relationship between the State and VUMC, state funding of VUMC, or state regulation of VUMC by the State are not sufficient to show the type of symbiotic relationship that supports a finding of state action on the part of VUMC. Adams v. Vandemark, 855 F.2d 312, 316 (6th Cir. 1988) (public funding and regulation of private entity was not a basis for finding that the private entity's actions were attributable to the state); Gekas v. HCA Health Servs. of Tennessee, Inc., No. 3:17-CV-00009, 2018 WL 1150702, at *2 (M.D. Tenn. Mar. 5, 2018) (hospitals did not act under color of state law merely because they were licensed and extensively regulated by the state and received a large part of their revenues from government sources). Similarly, although West contends a conspiracy exists because VUMC "perpetuates . . . violations of the civil rights of its patients in order to bill [DCS] for more" services, (Doc. No. 47 at 22, ¶ 98), this allegation is entirely conclusory and fails to actually set forth facts that would support the finding that a conspiracy existed. West offers no argument as to why the pervasive entwinement exception would apply.

It is significant that this Court has previously addressed the issue of state action, finding that

Vanderbilt University and several physicians were private entities that did not act under color of state law. In Bryant-Bruce, the parents alleged that medical treatment and breast-feeding of the infant was discontinued by VUMC against their wishes, that VUMC employees acted in bad faith in reporting alleged child abuse to state officials, that false statements were made about the infant and the alleged abuse, and that VUMC and the State acted in concert and were involved in a conspiracy. These allegations, even though serious, were not sufficient to show that VUMC and its physicians had acted under color of state law. 974 F. Supp. at 1142-43. The Court discerns no reason why Bryant- Bruce does not apply and control this case.

Even if Defendant VUMC were found to have acted under color of state law, West's allegations of wrongdoing against VUMC are so vague and unspecific that she fails to support a Section 1983 claim. A finding of liability under Section 1983 against a corporate actor cannot be based upon a theory of *respondeat superior* merely because of the acts of employees of the corporate actor. Street v. Corrections Corp. of America, 102 F.3d 810, 814 (6th Cir. 1996). Similar to a Section 1983 claim brought against a municipality, Id. Monell v. Department of Soc. Servs., 436 U.S. 658, 691-94 (1978), a claim against VUMC must be premised upon facts showing that a policy, custom, or practice of VUMC caused the deprivation of West's constitutional rights. Turner v. Lowen, 823 F.App'x 311, 320 (6th Cir. 2020) (applying Monell policy requirement to Section 1983 claims brought against VUMC). At a minimum, West must allege facts, which if proven, show that the execution of a VUMC policy or custom was the "moving force" behind the violation of the constitutional rights at issue. Id.

West has not alleged facts supporting a claim of Monell liability against VUMC. To the contrary, West's allegations are at best conclusory. The Court need not accept as true legal

conclusions, unwarranted factual inferences, and conclusory allegations. Maxwell, 538 F.App'x at 692; Hutchison v. Metropolitan Gov't of Nashville and Davidson Cnty., 685 F. Supp. 2d 747, 750-51 (M.D. Tenn. Feb. 5, 2010) (Nixon, J.). Merely asserting that VUMC has a policy to violate or to permit a violation of its patients' constitutional rights is not sufficient. Turner, 2019 WL 4820519, at *15 (plaintiffs who sued VUMC after one of its physicians alleged that the plaintiffs had abused their child failed to plead a Monell claim against VUMC based on conclusory allegations that "practices and policies of [VUMC] are the moving force" behind the physician's actions).

Finally, even if Plaintiff sufficiently alleged facts supporting her Section 1983 claims against VUMC, the claims are not timely. A claim under Section 1983 is subject to a statute of limitations that requires the claim to be brought within a certain time period. A lawsuit is subject to dismissal as untimely even if it is filed only a few days late. See Graham-Humphreys, 209 F.3d at 561; Adams v. Noble, 137 F. Supp. 2d 1054, 1058 (S.D. Ohio 2001). Although Section 1983 lacks its own statute of limitations, courts look to state law to determine the appropriate filing period. Reguli v. Russ, 109 F.4th 874, 879 (6th Cir. 2024). The statute of limitations for Section 1983 claims in Tennessee is the one year limitations period set out in Tenn. Code Ann. § 28-3-104(a)(1)(B). Roberson v. Tennessee, 399 F.3d 792, 794 (6th Cir. 2005); Hughes v. Vanderbilt Univ., 215 F.3d 543, 547 (6th Cir. 2000); Merriweather v. City of Memphis, 107 F.3d 396, 398 (6th Cir. 1997); Berndt v. Tennessee, 796 F.2d 879, 883 (6th Cir. 1986). The question of when the time period begins to run is determined by federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007); Eidson v. State of Tennessee Dep't of Children's Servs., 510 F.3d 631, 635 (6th Cir. 2007). Generally, the filing period begins to run when a plaintiff knows or should have known of the injury or basic facts that form the basis of the claim. Eidson, 510 F.3d at 635; Ruff v. Runyon, 258 F.3d 498, 500 (6th Cir. 2001). Alternatively, the Sixth

Circuit has suggested that the filing period for a Section 1983 claim begins to run when the plaintiff has a complete and present cause of action that can be raised in court. Dibrell v. City of Knoxville, Tennessee, 984 F.3d 1156, 1162 (6th Cir. 2021).

Construing the Amended Complaint in the light most favorable to West, all conduct by VUMC occurred in September 2020 and is conduct of which West was aware at the time. However, this lawsuit was not filed until October 6, 2021. Plaintiff fails to point to any conduct by VUMC that occurred within one year of the filing of this lawsuit. The claims against VUMC are subject to dismissal because they are barred by the statute of limitations.

F. Motion for Judgment on the Pleadings of Dillehay

Dillehay, who is sued both individually and in her official capacity, is named in West's Fourth Amendment claim and Fourteenth Amendment substantive due process claims. Dillehay seeks judgment on the pleadings under Rule 12(c) and echoes the dismissal arguments made by VUMC. She argues that she is not a state actor under Section 1983 and that West's Section 1983 claims are barred by the one-year statute of limitations. (Doc. No. 64 at 1-2). Dillehay also asserts that (1) she is entitled to immunity from liability pursuant to Tenn. Code Ann. § 37-1-410, which provides immunity to individuals who report suspected child abuse and/or assist in a DCS investigation and (2) she is entitled to qualified immunity on West's Fourteenth Amendment claim because only the juvenile court may deprive an individual of the right to familial association. Id. at 2.

West opposes Dillehay's dismissal. West argues that Dillehay has committed perjury based on an affidavit of Ann Charvat, who was present when Dillehay met with West at the VUMC before being discharged. (Doc. No. 87-2). West then argues that the motion to dismiss should be denied

because: 1) Dillehay is a state actor because the law permits employees of private business entities to be viewed as state actors and because West believes that Dillehay was "moving with the authority of the state" and that she had no choice but to speak to Dillehay; 2) "excusable neglect" applies to any statute of limitations violations; 3) she has set out many allegations of wrongdoing against Dillehay that support claims for relief; and, 4) Dillehay is not entitled to immunity. (Doc. No. 87 at 1-3).

The Court's analysis of the lack of state action and the statute of limitations for VUMC applies equally to Dillehay. Dillehay is not a state actor and the claims against her were not timely brought. Nothing set out in West's response warrants a different conclusion.

With respect to the state action requirement, West relies on Giron v. Correction Corporation of America, but does not provide a case citation. (Id. at 2). The Court presumes that she intends to refer to Giron v. Corr. Corp. of Am., 14 F. Supp. 2d 1245 (D.N.M. 1998). That case involved a prison guard who was employed by a private company that operated a prison facility and who was sued under Section 1983 by an inmate at the facility. Although the guard was found to have acted under color of state law, the finding of state action hinged upon the private company performing a traditional state function by operating a correctional facility. The employee was likewise deemed to have acted under color of state law in the performance of prison guard duties. The facts of Giron are readily distinguishable because that case involved the unique situation of a private entity operating a correctional facility that would otherwise be operated by the state. Such a situation is not here because, a private hospital and its employees do not perform a traditional public function. West's contention that she believed that Dillehay "was moving with the authority of the state" simply fails to constitute evidence that would support a finding that Dillehay acted under color of state law.

With respect to the statute of limitations defense, West appears to concede that her claims against Dillehay are untimely because the only argument that she raises is that the "statute of limitations violations were within the realm of excusable neglect." (Doc. No. 87 at 2). This brief statement fails as a matter of law. First, West does not explain what the neglect was that caused her to miss the filing deadline or why it should be excused. Second, missed filing deadlines are not excused based on "garden variety claims of excusable neglect." Robertson v. Simpson, 624 F.3d 781, 784 (6th Cir. 2010). "Only exceptional circumstances, not garden variety claims of excusable neglect, allow [a court] to toll the statute of limitations." Ruth v. Unifund CCR Partners, 604 F.3d 908, 913 (6th Cir. 2010) (cleaned up). Plaintiff has not shown such circumstances. *Pro se* parties are not excused from complying with applicable statutes of limitations simply because of their *pro se* status. Martin v. Ford Motor Co., 2022 WL 17076782, at *2 (6th Cir. Aug. 23, 2022); Huber v. Jefferson Cnty. Pub. Schs., 2019 WL 3255167, at *4 (W.D. Ky. July 19, 2019); Gates v. Hudson, 2014 WL 346722, at *4 (W.D. Tenn. Jan. 30, 2014).

The Court holds that West's Section 1983 claims against Dillehay must be dismissed. The Court further finds that West has not brought claims under state law, and, accordingly, the Court need not address Dillehay's alternative arguments that she is entitled to immunity under state law or that she is entitled to qualified immunity from Plaintiff's Fourteenth Amendment substantive due process claim need not be addressed.

G. Motion to Dismiss of Avertest

Avertest is named in West's Fourteenth Amendment substantive due process rights claim. (Doc. No. 47 at ¶ 116). Avertest seeks dismissal because (1) Plaintiff's allegations fail to state a constitutional claim under Section 1983 because her allegations do not describe conduct that violates

the Constitution and (2) Plaintiff did not properly serve Avertest with process. (Doc. No. 53 at 7-16).

Plaintiff opposes the motion. (Doc. Nos. 79, 80). She argues that her allegations that Avertest falsely reported two drug test results as positive, failed to remedy the results, and provided additional false information to cover up its actions must be taken as true. West contends that falsifying evidence is a crime and that the false test results were relied upon by the state court to continue the removal of her daughter from her custody. She further contends that Avertest's actions were likely motived by financial motivations. Finally, she believes that Avertest was served with process through a professional process server and it is clear that Avertest received notice of the case.

The Court will grant Avertest's motion because West's allegations do not support a claim that Avertest violated West's Fourteenth Amendment substantive due process rights. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. One component of the general protection of "due process of law" is substantive due process, which "bars certain government actions regardless of the fairness of the procedures used to implement them." Guertin v. Michigan, 912 F.3d 907, 918 (6th Cir. 2019) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). To succeed on a substantive due process claim, West must show the deprivation of a constitutionally protected interest and that "the government's discretionary conduct that deprived that interest was constitutionally repugnant." Halasz v. Cass City Pub. Schs., 162 F.4th 724, 736 (6th Cir. 2025) (quoting Guertin, 912 F.3d at 922), rehearing en banc denied, No. 25-1492, 2026 WL 1002139, at *1 (6th Cir. Feb. 17, 2026). "It is difficult to state a substantive due process claim." Newcomb v. Williamson Cnty. Sch. Bd. of Educ., No. 3:24-CV-00631, 2024 WL 4859688, at *8

(M.D. Tenn. Nov. 21, 2024) (Trauger, J.).

West's constitutional claim against Avertest is premised on her contention that Avertest's actions were purposeful and malicious acts designed to infringe upon West's family association rights because the test results were relied upon to further the continued removal of L.L. from her custody. (Doc. No. 47 at ¶¶ 116-117). Generally, such a claim would be foreclosed because it is the state court's order removing or continuing the removal of a child that actually deprives or infringes upon the parent's right to familial association with the child. Heithcock, 2016 WL 11786416, at *4 (6th Cir. Oct. 4, 2016); Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs., 640 F.3d 716, 729 (6th Cir. 2011). DCS had the investigative role regarding custody of L.L. The state court had the ultimate decision-making power and authority concerning removal of L.L. from West's custody. Indeed, L.L. had been removed from West's custody by virtue of a court order prior to any of the alleged actions of Avertest. Avertest simply took no action that actually deprived West of this right.

A limited exception exists when a plaintiff claims that the court order for a child's removal was based on "a bad-faith child-services investigation." This requires "evidence that the investigation was undertaken in bad faith or with a malicious motive or if tactics used to investigate would 'shock the conscience.'" Heithcock, 2016 WL 11786416, at *4 (quoting *Kottmyer*, 436 F.3d at 692, n.1); but see Arsan v. Keller, 784 F.App'x 900, 910 (6th Cir. 2019) (favorably citing Pittman and Teets v. Cuyahoga Cty., 460 F.App'x 498, 502 (6th Cir. 2012) (for the propositions that county caseworkers were not liable for violating a parent's substantive due process right even with allegations that caseworkers conspired to deprive the parent of custody of her children and that even "intentional misrepresentations in custody proceeding that result in removal of child" would not be enough to support substantive due process claim against caseworkers)). West's contention that

Avertest acted maliciously and fraudulently arguably implicates this exception. The Court finds several shortcomings in West's theory.

First, it was DCS, not Avertest, that investigated West and that petitioned the state court for the removal and continued removal of L.L. from West's custody. Avertest has no investigatory powers or duties in this regard. It is a drug testing laboratory that provided drug testing services once the removal proceedings had already been initiated and were underway.

Second, the bad-faith investigation exception hinges upon allegations and evidence of bad faith or a malicious motive in the investigation. This is necessary because the mere fact of an investigation into a parent does not infringe upon the protected parental rights of a parent, see Kottmyer, 436 F.3d at 690, and an investigation that leads to the removal of a child by a state court results in an infringement by the state court, not an infringement by the investigator. Only when the investigator acts with a malicious motive or in bad faith will a substantive due process claim exist against the investigator. West's allegations against Avertest fail to evidence the type of bad-faith or malice necessary for this claim. Although West contends that Avertest "falsified" or fraudulently reported drug test results, there are no allegations that Avertest reported a drug test result even though a test did not occur. Instead, West's contention that the test results were "false" is based on her disagreement with the test results and her belief that the results were not accurate. This is significantly different from an allegation that Avertest reported test results that did not actually exist and thus provided manufactured and falsified evidence. Furthermore, West's own allegations are that the two test results in question came back with positive test results because of abnormal creatinine levels in the testing sample. (Doc. No. 47 at ¶ 86). There are no factual allegations supporting her contention that Avertest purposefully took affirmative steps to falsify these two drug

test results, let alone that they did so with bad faith or malice toward her. Plaintiff's argument that Avertest had a financial motive to falsify drug test results is entirely speculative and unsupported by any factual allegations. Similarly, Plaintiff's assertion in her response that Avertest "specifically targeted" her is unsupported by any factual allegations.

As a corporate entity sued under Section 1983, Avertest cannot be deemed liable based upon a theory of *respondeat superior* for the actions of its employees. Street, 102 F.3d at 817. Liability under Section 1983 can only be imposed against Avertest in the same manner as a claim against a municipal entity; so there must be a showing that a policy or custom of Avertest was the moving force behind the claimed injury. O'Brien v. Michigan Dep't of Corr., 592 F.App'x 338, 341 (6th Cir. 2014). Pleading a municipal liability claim requires more than conclusory, speculative, or general allegations. See Romero v. City of Lansing, Michigan, 159 F.4th 1002, 1015 (6th Cir. 2025) ("Even at the motion-to-dismiss stage, [the plaintiff] must plead specific facts beyond speculation and bare recitation of the standard for municipal liability."). In the instant case, West does not point to any specific factual allegations that support a plausible conclusion that the two drug test results that she claims were fabricated or falsely reported occurred because of a custom or policy on the part of Avertest. Indeed, West's own allegations are that she had "many" drug tests with Avertest without incident. (Doc. No. 47 at ¶ 86). That two out of "many" drug tests may have had accuracy issues does not evidence a custom or policy on the part of Avertest to inaccurately or falsely report drug test results.

H. West's Motion for Summary Judgment

West's motion requests both summary judgment and that the matter proceed to trial. She asks for a judgment in her favor because she believes the merits of her case warrant judgment in her

favor. Her motion fails to present any actual argument pertaining to the grant of summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Plaintiff also fails to comply with the procedural requirements of Local Rule 56.01 that apply to the filing of a motion for summary judgment. For these reasons, the motion will be denied as procedurally deficient and without regard to the merits of any of her claims. Dawley v. Acme Block & Brick, Inc., No. 2:19-CV-00052, 2021 WL 6501950, at *2 (M.D. Tenn. Feb. 24, 2021) (denying partial summary judgment for failure to comply with the local rules); Plemons v. Core Civic Admin. Headquarters, No. 3:18-CV-00498, 2019 WL 2725285, at *1 (M.D. Tenn. July 1, 2019) (same).

## V. DISMISSAL OF THE UNSERVED DEFENDANTS

Process has not been served upon eight of the individually named Defendants: Sylvia Cooks (Vanderbilt), Alexandria Hickson, Valisa Holland, Kimberly White, Douglas Sykes, David Varras, Ryna Sherry, and Michael Hedges. The docket reflects that summons for all 14 Defendants in the case were issued and returned to West on November 12, 2021. (Doc. No. 7). It appears that West attempted to have process personally served upon the eight Defendants at their private, residential addresses, but that service of process for them was returned unexecuted in January 2022 with notations that they could not be located. (Doc. Nos. 23, 26-28, 30-31, 33, and 35).[7] There is no indication that alias summons were issued for any of these Defendants or that West made any other attempts to serve them with process. A year later, West filed a motion for service by publication (Doc. No. 88) as to Sylvia Cooks (Vanderbilt), Alexandria Hickson, Valisa Holland, and Kimberly White. By a contemporaneously entered order, this motion has been denied. (Doc. No. 115).

[7] Some of the service returns are so faint that they are virtually unreadable.

Rule 4(c)(1) of the Federal Rules of Civil Procedure states that "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." Rule 4(m) provides that:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

West was twice advised that she was responsible for serving process upon Defendants in accordance with Rule 4. (Doc. No. 5 and 6). Furthermore, in the order entered November 22, 2021, the Court specifically advised West that the "[f]ailure to timely complete service of process could result in dismissal of this action. Fed. R. Civ. P. 4(m)." (Doc. No. 5 at 2). The time period provided by Rule 4(m) for service of process has clearly passed many times over without the eight Defendants at issue being served with process. Indeed, by the time that West filed her motion for service by publication in January 2023, which is the only affirmative step that she took regarding service of process after her initial attempts to serve the eight Defendants were unsuccessful, the Rule 4(m) time period had already expired by several months. Because the time frame permitted under Rule 4(m) for obtaining service of process upon Defendants has lapsed and because West was previously warned by the Court that her failure to timely complete service of process could result in dismissal of the action, Rule 4(m) requires that the case be dismissed without prejudice as to these Defendants.

All matters in this case having now been resolved, the case will be dismissed in its entirety as to all claims and Defendants.

An appropriate order will enter.

WAVERLY D. CRENSHAW, JR
UNITED STATES DISTRICT JUDGE